UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNA S. LYONS,

       Plaintiff,

v.

       Case No. 1:22-cv-1202

       Hon. Jane M. Beckering

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff filed applications for DIB and SSI on March 2, 2020, alleging a disability onset date of January 1, 2018. PageID.32. Plaintiff identified her disabling conditions as: fibromyalgia; problems with her left arm (goes numb, tingles and drops things); two bolts inside of her head[1]; pinched nerves; asthma; chronic obstructive pulmonary disease (COPD); and sickle cell anemia. PageID.270. Plaintiff completed the 10th grade and had no past relevant employment. PageID.43. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 21, 2021. PageID.32-44. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Assuming that this is a reference to some type of medical hardware, the ALJ found that "there is no evidence that the claimant has bolts in her head". PageID.37.

1

I.      LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.     ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2018, and that she met the insured status requirements of the Social Security Act through September 30, 2021. PageID.34. At the second step, the ALJ found that plaintiff has severe impairments of COPD, asthma, sleep apnea, obesity, and multilevel central stenosis. PageID.34. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.37.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can frequently balance. She can occasionally climb ramps and stairs but never climb ladders [sic] ropes and scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. She can never work around extreme cold, extreme heat, humidity, nor concentrated exposure to atmospheric conditions, as defined by the *Selected Characteristics of Occupations*. The claimant can never work around hazards, such as unprotected heights or unguarded or unprotected moving mechanical parts.

PageID.38. The ALJ also found that plaintiff has no past relevant work. PageID.43.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.43-44.

4

Specifically, the ALJ found that plaintiff could perform the requirements of: order clerk, food and beverage (169,120 jobs); document preparer, microfilm (50,000 jobs); and, gauger (50,000 jobs). PageID.43. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2018 (the alleged onset date) through December 21, 2021 (the date of the decision).  PageID.44.

### III.  DISCUSSION

Plaintiff set forth two issues on appeal.

**A. The ALJ did not address limitations of all of plaintiff's impairments, including those that he found to be non-severe, at subsequent stages of the disability determination process.**

Residual Functional Capacity (RFC) is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. *See* 20 C.F.R. §§ 404.1545 and 416.945. In determining the RFC, the ALJ considers impairments that are both "severe" and "not severe." *Id*. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted).

Plaintiff contends that her non-severe impairment of anxiety is not a slight abnormality which has more than a minimal effect on her ability to work. *See* Plaintiff's Brief

5

(ECF No. 14, PageID.1891).[2] The issue before the Court is whether the ALJ considered plaintiff's non-severe impairment of anxiety in determining the RFC.

While the medical evidence established a finding of anxiety (PageID.34), the ALJ found that,

> The claimant's medically determinable mental impairment of anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe.

PageID.35.  In making this determination, the ALJ "considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)" which "are known as the 'paragraph B' criteria." *Id*.  These consist of (1) understanding, remembering, or applying information, (2) interacting with others, (3), concentrating, persisting or maintaining pace, and (4) adapting or managing oneself.  PageID.35-36.  The ALJ concluded that,

> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

PageID.36.

As a general rule, the ALJ should consider non-severe impairments in developing a claimant's RFC.  As this Court previously explained:

> Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id*. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id*. "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore

---

[2] Plaintiff also refers to sleep apnea in her discussion of non-severe impairment.  Plaintiff's Brief at PageID.1891.  As discussed, the ALJ found that the sleep apnea was a severe impairment.  PageID.34.

legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). *See Hedges v. Commissioner of Social Security*, 725 Fed. Appx. 394, 395 (6th Cir. 2018) (whether the ALJ characterized the claimant's mental-health impairments as severe or non-severe at step two was "legally irrelevant" when the claimant had severe physical impairments and the ALJ considered the limiting effects of all of the claimant's impairments, including those that were not severe, in evaluating the claimant's ability to work in step four).

*Ridenour v. Commissioner of Social Security*, No. 1:22-cv-117, 2023 WL 2643492 at *3 (W.D. Mich. March 27, 2023).

Here, the ALJ recognized that the limitations identified in the "paragraph B" criteria are not an RFC assessment but used to rate the severity of mental impairments at the second and third steps of the sequential evaluation process, and that the mental RFC assessment used at the fourth and fifth steps of the sequential evaluation process requires a more detailed assessment. PageID.36.  For these reasons, the ALJ included a mental RFC assessment of the non-severe impairment which reflected the degree of limitation found in the "paragraph B" criteria:

> State agency consultants, Larry Irey, Ph.D. and Robert Gerl, Ph.D. found the claimant's anxiety was non-severe, causing only mild limitations in mental functioning (1A, 2A, 7A, 8A). These assessments are persuasive, as they are consistent with the record evidence. As discussed above, the claimant generally displayed normal judgment and thought content, and she presented as alert and oriented. She also noted she could shop in stores and had never been fired or laid off due to an inability to get along with others. Moreover, the claimant was described as cooperative, and the evidence does not suggest she engaged in mental health counseling during the period at issue. Additionally, her mental status examinations did not reveal any significant abnormalities. This evidence supports no more than mild limitations in mental functioning. . .

PageID.36.  The ALJ considered the non-severe impairment of anxiety in evaluating plaintiff's RFC.  *See Hedges*, 725 Fed. Appx. at 395.  Accordingly, plaintiff's claim of error should be denied.

> **B. The RFC assessment did not comply with Social Security Ruling ("SSR") 96-8p where the ALJ did not consider whether plaintiff could perform sustained work activities on a regular and continuing basis given evidence in the record of her fatigue and loss of stamina throughout the day, her numerous**

7

**hospitalizations, and her need for frequent breaks due to her severe impairments.**

Plaintiff contends that her numerous hospitalizations related to COPD and breathing problems interfere with her ability to perform sustained work activities. Plaintiff's Brief at PageID.1895-1896. Plaintiff contends that the ALJ erred because the RFC evaluation did not address her absenteeism due to the hospitalizations as required by SSR 96-8p:

> In assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. . .

Plaintiff's Brief at PageID.1895, citing SSR 96-8p (July 2, 1996), 1996 WL 374184 at *7.

As a general proposition, courts have considered the effect of medical treatment on a claimant's absenteeism. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) ("This court has held that if an individual's medical treatment significantly interrupts the ability to perform a normal, eight-hour work day, then the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity."); *Gotsis v. Commissioner of Social Security*, No. 12-CV-10075, 2013 WL 1289280 at *4 (E.D. Mich. March 28, 2013) ("The Social Security regulations provide that 'The RFC assessment must be based on all of the relevant evidence in the case record, such as: . . . The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication).' Soc. Sec. Reg. 96–8p") (also citing *Newton*, 209 F.3d at 459).

Here, however, plaintiff does not provide a factual basis (her specific treatment history) or a legal basis (meaningful legal argument) to support her claim. While plaintiff refers

to "numerous hospitalizations" (PageID.1895-1896), the majority of these incidents involve visits to the emergency room. Plaintiff's argument is based on a treatment note from Dr. Syad Razvi on March 10, 2020, that

> "Unfortunately, she continues to have exacerbation requiring [emergency room] visits on October 3, October 16, November 15 of 2019, January 2020, and February 2020 …. She uses her duo nebs every 4 hours."

Plaintiff's Brief at PageID.1896, citing ECF No. 5-8, PageID.449. During this evaluation, Dr. Razvi stated that plaintiff "still continues to smoke marijuana 1-2 joints per day". PageID.449. Dr. Razvi assessed plaintiff with marijuana abuse and that this was exacerbating her respiratory problems, *i.e.*, "I do believe that marijuana smoking is leading to her having recurrent exacerbations, I spoke to her in detail about trying edible marijuana if she needs it for her chronic pain." PageID.449, 982.[3] In summary, plaintiff appears to contend that the ALJ failed to address her absenteeism or time off task due to the use of duo nebs every four hours and emergency room visits about once per month from October 2019 through February 2020.

The ALJ's decision evaluated plaintiff's COPD and breathing problems in detail. At the third step of the sequential evaluation, the ALJ found that plaintiff's COPD/asthma did not meet the requirements of Listing 3.02 (chronic respiratory disorders) or Listing 3.03 (asthma),[4]

---

[3] At the administrative hearing (Dec. 8, 2021), plaintiff testified that she takes a 20-minute nebulizer treatment every four hours. PageID.59-60. In addition, plaintiff's attorney and the ALJ investigated plaintiff's medical condition, treatment regimen, and marijuana smoking in detail. PageID.59-69.

[4] The ALJ found:

"The claimant's impairments do not meet Listing 3.02 (chronic respiratory disorders), since the medical evidence fails to demonstrate the claimant suffers from a chronic respiratory disorder due to any cause with FEV1 equal to or less than the values specified in Table I of the listing corresponding to the claimant's height without shoes; or with FVC equal to or less than the values specified in Table II corresponding to the person's height without shoes; or chronic impairment of gas exchange demonstrated by average single breath DLCO measurements less than or equal to the value in Table III corresponding to the person's height without shoes, arterial PaO2 and PaCo2 measured concurrently by an ABG test measuring less than or equal to the values in Tables IV-A, IV-B, or IV-C, or SpO2 measured by pulse oximetry less than or equal to the value in Table V; or exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart, each lasting 48 hours.

and that her sleep apnea did not meet the requirements of Listing 3.14 (respiratory failure).[5] PageID.37-38.

With respect to plaintiff's RFC, the ALJ reviewed plaintiff's history of respiratory ailments from 2015 through 2021, including her test results and visits to the emergency room. PageID.39-40. The ALJ found that "the record evidence does not show that her respiratory impairments cause disabling limitations." PageID.39. During this period, the ALJ observed that plaintiff indicated that she was not using her CPAP regularly and that Dr. Razvi "believed 'that the marijuana smoking is leading to her having recurrent exacerbations' of asthma/COPD." PageID.40.

The ALJ did not explicitly address whether plaintiff's history of visiting emergency rooms or her use of dua nebs would affect her ability to engage in sustained gainful employment. However, the record does not contain evidence that plaintiff's medical treatment history or emergency room visits rose to the level of a work preclusive disabling condition. Dr. Razvi's medical records cited by plaintiff do not establish that her emergency room visits from October 2019 through February 2020 or her use of dua nebs would last for a continuous period of not less than 12 months. PageID.32. *See* 20 C.F.R. §§ 404.1505 and 416.905 ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable

---

[4] Listing for 3.03 is not met, since the medical evidence discussed below fails to demonstrate the claimant suffers from asthma with Forced Expiratory Volume in one second (FEV1) equal to or less than the values specified in Table VI of the listing corresponding to the claimant's height without shoes, and exacerbations or complications during the adjudication period requiring three 48-hour hospitalizations within a 12-month period and at least 30 days apart." PageID.38.

[5] The ALJ found:

"The claimant's obstructive sleep apnea does not meet the criteria for listing 3.14. There is no evidence of respiratory failure (see 3.00N) resulting from any underlying chronic respiratory disorder except CF (for CF, see 3.04D), requiring invasive mechanical ventilation, noninvasive ventilation with BiPAP, or a combination of both treatments, for a continuous period of at least 48 hours, or for a continuous period of at least 72 hours if postoperatively, twice within a 12-month period and at least 30 days apart (the 12-month period must occur within the period we are considering in connection with your application or continuing disability review)." PageID.38.

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").

In this regard, the State Agency consultants cited by the ALJ, Saadat Abbasi M.D. and Catherine Mazei, D.O. (PageID.42, 76-113, 120-143), were aware of plaintiff's medical history and the objective evidence of her respiratory condition. However, neither consultant included limitations regarding plaintiff's need to seek medical treatment at an emergency room or to take dua nebs throughout the day. The ALJ noted that Dr. Abbasi's opinion (Jan. 26, 2021) found that plaintiff could perform a reduced range of light work, while Dr. Mazei's opinion (June 22, 2021) found that plaintiff could perform a reduced range of sedentary work. PageID.42. Based on these evaluations, the ALJ found these opinions partially persuasive and "that limiting the claimant to work at the sedentary exertional level better accommodates her respiratory conditions." PageID.42. For all of these reasons, plaintiff's claim of error should be denied.

### IV. RECOMMENDATION

Accordingly, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated:  November 3, 2023            /s/ Ray Kent
                                    RAY KENT
                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).